IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

FEDERAL DEPOSIT INSURANCE

CORPORATION, *et al.*,

    **Plaintiffs,**

          v.                                             CIVIL NO. 15-1635 (JAG)

HERMAN JOSE WIRSHING-PINKLER, *et al.*,

    **Defendants.**

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

    This matter is before the Court on Counterclaim-Defendant Federal Deposit Insurance Corporation's ("FDIC") Motion in Compliance with Order to Show Cause and Requesting Dismissal of Counterclaim ("Motion to Dismiss"), Docket No. 10; Defendants Herman Wirshing Pinkler, Carolina Mendoza Davila, and Conjugal Partnership Wirshing-Mendez's (collectively "Defendants") Motion to Continue Claim Filed Prior to Receivership ("Motion to Continue"), Docket No. 11; and Defendants' Pro Se Motion to Show Cause, Inform the Court, and Request for Status Conference (Defendants' "Response"), Docket No. 13.

    This case concerns a foreclosure action brought by Doral Bank ("Doral") against Defendants. Defendants filed a counterclaim against Doral. The issue before the Court is whether Defendants' counterclaim should be dismissed for failure to comply with the administrative claims procedure pursuant to the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") by failing to timely continue their counterclaim in this Court after the FDIC

disallowed it. The Court holds that Defendants did timely continue their counterclaim within the 60-day period provided by FIRREA. Accordingly, the FDIC's Motion to Dismiss is DENIED, and Defendant's Motion to Continue is GRANTED.

## BACKGROUND

On October 31, 2014, Doral filed a foreclosure action against Defendants in the Court of First Instance of Puerto Rico. Docket No. 4-1 at 1. On March 24, 2015, Defendants answered Doral's complaint and filed a counterclaim against Doral. *Id.* at 8-14. While the action was pending, Doral was closed and the FDIC was appointed as receiver on February 27, 2015. *Id.* at 17. As part of Doral's closing, the FDIC and Banco Popular de Puerto Rico ("Banco Popular") executed a purchase and assumption agreement, whereby Defendants' mortgage loan was transferred to Banco Popular. *Id.* at 17; Docket No. 14. However, the FDIC retained all third-party claims with respect to Defendants' mortgage loan, including the counterclaim filed against Doral. Docket No. 14. Thus, Banco Popular is now Plaintiff in the instant action and Defendants' mortgage creditor, but the FDIC continues to be Counterclaim-Defendant.[1]

On May 22, 2015, the FDIC removed the instant action to federal court pursuant to 12 U.S.C. § 1819(b)(2)(B) and 28 U.S.C. § 1442(a)(1). Docket No. 1. Meanwhile, Defendants filed a timely administrative claim with the FDIC, Docket No. 10 at 2, which the FDIC disallowed, Docket No. 10-1. The FDIC sent Defendants a notice of disallowance. *Id.* The notice was dated

---

[1] Banco Popular filed, and this Court granted, a Motion to Substitute the FDIC as Plaintiff with regard to the foreclosure action against Defendants. Docket Nos. 14, 15.

February 29, 2016, *id.*, but the FDIC mailed it on March 1, 2016, Docket Nos. 13-1; 22 at 8, and it was received on March 14, 2016, Docket No. 13-2.

On May 2, 2016, the FDIC filed their Motion to Dismiss, alleging that this Court lacks subject matter jurisdiction over Defendants' counterclaim because Defendants did not exhaust the administrative claims process. Docket No. 10. Specifically, the FDIC argues that Defendants failed to timely continue their action within 60-days of the date of the FDIC's notice of disallowance. *Id.* On the same date that the FDIC filed its Motion to Dismiss, Defendants filed their Motion to Continue, petitioning the Court to continue the proceedings as to Defendants' disallowed counterclaim. Docket No. 11. Defendants contend that their Motion to Continue was timely filed. Docket No. 13.

The Court ordered the parties to file supplemental legal memoranda concerning specific issues that were not well-briefed, including what date should be used for the commencement of the 60-day period for continuing an action after the FDIC's notice of disallowance. Docket No. 19. The FDIC filed its memorandum on December 20, 2016. Docket No. 22. Defendants requested an extension of time and have yet to file their memorandum. Docket No. 23.[2]

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss an action against it for lack of federal subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Since federal courts are courts of limited jurisdiction, the party asserting jurisdiction has the burden of

---

[2] The Court denied Defendants' requested extension because the Court had already resolved the issue. Docket No. 26.

demonstrating its existence. *See Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). In assessing a motion to dismiss for lack of subject matter jurisdiction, a district court "must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs." *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998) (citing *Royal v. Leading Edge Prods., Inc.*, 833 F.2d 1 (1st Cir. 1987)). Additionally, a court may review any evidence, including submitted affidavits and depositions, to resolve factual disputes bearing upon the existence of jurisdiction. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996).

"Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case." *Acosta-Ramírez v. Banco Popular de Puerto Rico*, 712 F.3d 14, 18 (1st Cir. 2013). If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the Court lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996); *Prestige Capital Corp. v. Pipeliners of Puerto Rico, Inc.*, 849 F.Supp.2d 240 (D.P.R. 2012).

## ANALYSIS

The Court begins by giving an overview of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") and the administrative claims procedure it establishes. Then, the Court considers whether Defendants' Motion to Continue was timely under FIRREA.

I.     Financial Institutions Reform, Recovery, and Enforcement Act of 1989

FIRREA establishes the FDIC as the agency that would best handle failed banks as conservator or receiver, "which will succeed to all rights, titles, powers, and privileges of the insured depository institution." 12 U.S.C. § 1821(d)(2)(A). The FDIC also assumes the liabilities of the failed institution. *Id.* § 1823(c)(2)(A)(i). The idea behind this framework was "to facilitate takeovers of insolvent financial institutions and smooth the modalities by which rehabilitation might be accomplished." *Acosta-Ramirez v. Banco Popular de Puerto Rico*, 712 F.3d 14, 18 (1st Cir. 2013) (quoting *Marquis v. FDIC*, 965 F.2d 1148, 1154 (1st Cir. 1992)).

Because Congress wanted the FDIC to handle failed depository institutions in an expeditious manner, FIRREA created a statutory claims process to handle all claims against failed banks. *Acosta-Ramirez*, 712 F.3d at 19. After the appropriate governmental entity appoints the FDIC as receiver, it must publish a notice to the depository institution's claimants of their obligation to present proof of their claims by a specific date (the "claims bar date").[3] 12 U.S.C. § 1821(d)(3)(B)(i). If the claimant fails to file the claim before the claims bar date, the claim is barred. *See* 12 U.S.C. § 1821(d)(5)(C). Here, Defendants filed a timely administrative claim with the FDIC. Docket No. 10 at 2.

After a claim is filed, the FDIC has 180 days to allow or disallow the claim. *Simon v. F.D.I.C.*, 48 F.3d 53, 56 (1st Cir. 1995) (citing 12 U.S.C. § 1821(d)(5)(A)(i)). Claimants then may seek administrative or judicial review "[b]efore the end of the 60-day period beginning on the earlier

---

[3] The governmental entity that appoints the FDIC as receiver of failed financial institutions in Puerto Rico is the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico. *See* P.R. Laws Ann. tit. 7, § 2001.

of" the expiration of the administrative decisions deadline or "the date of any notice of disallowance." 12 U.S.C. § 1821(d)(6)(A). Specifically, the statute allows a claimant seeking judicial review to "file suit on such claim (or continue an action commenced before the appointment of the receiver)." *Id.* Failing to comply with the statutory administrative claims procedures deprives the courts of subject matter jurisdiction over any claim relating to assets, acts, or omissions of the failed financial institution. *See Id.* § 1821(d)(13)(D)(i); *Acosta-Ramirez*, 712 F.3d at 20.

## II.   Timeliness of Defendants' Motion to Continue

This case turns on the triggering date for the 60-day period from "the date of any notice of disallowance" that the claimant has to file suit or continue an action. The FDIC contends that this period should commence on the date printed on the notice of disallowance it sent to Defendants— February 29, 2016. Docket No. 22 at 6-7. Accordingly, the FDIC contends that Defendants' Motion to Continue—filed on May 2, 2016—is late, and thus, this Court does not have jurisdiction over Defendants' counterclaim. Docket No. 22 at 6-7. Alternatively, the FDIC argues that the Court should hold that the 60-day period began on the date that the notice was deposited in the mail— March 1, 2016. *Id.* at 7-8. The FDIC contends that Defendants' Motion to Continue is also untimely under this theory.[4] Conversely, Defendants position that the 60-day period should commence on the day they received the notice of disallowance—March 14, 2016. Docket No. 13. Thus, they

---

[4] As the Court further explains below, *supra* p. 9-10, the FDIC's calculation of days is incorrect.

contend their Motion to Continue is timely, and the FDIC's Motion to Dismiss should be denied. Docket No. 13.

The Court holds that Defendants' Motion to Continue is timely. First, the Court holds that the date printed on the notice is not the appropriate triggering date, as the FDIC argues. Thus, the trigger date is either the mailing date of the notice or the date the notice was received. The Court holds that Defendants' Motion to Continue is timely as to either of these dates, and thus the Court need not decide which of these two dates is more appropriate.

### A.  Date Printed on Notice of Disallowance

The FDIC's position that the triggering date for the 60-day period should be the date printed on the notice of disallowance finds no support in existing caselaw. The courts that have considered this issue have decided that the 60-day time limit begins either when the FDIC mails its notice of disallowance, *see, e.g., Miller v. F.D.I.C.*, 738 F.3d 836, 841-43 (7th Cir. 2013), or the date when the claimant receives the notice of disallowance, *see, e.g., Laurenzano v. Crossland Sav. Bank, FSB*, 837 F. Supp. 514, 516-17 (E.D.N.Y. 1993). The FDIC does not cite, and this Court's independent research failed to reveal, a single case that specifically holds that the 60-day period begins to run on the date printed on the notice of disallowance.

The cases that the FDIC does cite do not support its position, because they did not consider the specific issue at hand. The FDIC states that "several decisions support the [FDIC]'s position that the 60-day period begins to run on 'the date of any notice of disallowance.'" Docket No. 22 at 7. To illustrate this point, the FDIC carefully selects language from *Acosta-Ramirez v. Banco Popular de Puerto Rico*, 712 F.3d 14 (1st Cir. 2013), and *First Union Nat. Bank of Florida v. N. Beach Prof'l Office Complex, Inc.*, 841 F. Supp. 399 (M.D. Fla. 1993). However, neither of these cases specifically

considered which date should trigger the 60-day period. Furthermore, this issue was not controlling in either case, and neither court examined it in any detail. Thus, these cases have no precedential value as to when the 60-day period commences. *See United States v. DiPina*, 178 F.3d 68, 73 (1st Cir. 1999) ("Where, in a prior decision, we have not considered an issue directly and assessed the arguments of parties with an interest in its resolution, that decision does not bind us in a subsequent case where the issue is adequately presented and squarely before us . . . .").

The FDIC also argues that the plain language of the statute unambiguously supports its position that the triggering date is the date printed on the notice of disallowance. Docket No. 22 at 6-7. The Court disagrees. 12 U.S.C. § 1821(d)(6)(A) provides, in relevant part, that the 60-day period begins to run on "the date of any notice of disallowance of such claim *pursuant to paragraph (5)(A)(i)*." (emphasis added). Thus, the "date of any notice of disallowance" must be read in conjunction with subsection (d)(5)(A)(i), which provides that "the [FDIC] shall determine whether to allow or disallow the claim and *shall notify* the claimant of any determination with respect to such claim." (emphasis added). The statute then specifies that this notice requirement is satisfied once the notice of disallowance is mailed:

> (iii) Mailing of notice sufficient
>
> The requirements of clause [(d)(5)(A)](i) shall be deemed to be satisfied *if the notice of any determination with respect to any claim is mailed* to the last address of the claimant
>
> . . . .

*Id.* § 1821(d)(5)(A)(iii) (emphasis added). Thus, when interpreting the meaning of "the date of any notice of disallowance" in the context of the whole statute, it is hardly unambiguous that the statute's plain language sets this date as the date *printed* on the notice of disallowance.  If anything,

it seems that, at the earliest, this date would be the date the notice of disallowance is mailed, since the 60-day time limit is tied to "the date of any notice of disallowance . . . *pursuant to paragraph (5)(A)(i),*" *id.* § 1821(d)(6)(A), and the requirements of subsection (d)(5)(A)(i) are only complied with if the notice of disallowance is mailed, *id.* § 1821(d)(5)(A)(iii). *Cf. Miller*, 738 F.3d at 841-43 (holding that the 60-day period begins to run on the date the FDIC mails its notice, pursuant to a similar statutory analysis).

In addition, the FDIC's position leads to the illogical result that a claim could be foreclosed even if the FDIC is negligent in mailing the notice or intentionally aims to prevent a claimant from receiving a timely notice of disallowance. For example, the FDIC could simply print a notice of disallowance and hold it for 59 days before sending it. Thus, by the time the claimant receives the notice, the 60-day period would have expired and his claim would be extinguished. The Court does not believe Congress intended for this result. *See Laurenzano v. Crossland Sav. Bank, FSB*, 837 F. Supp. 514, 516 (E.D.N.Y. 1993) ("Congress could hardly have provided that the F.D.I.C. could print a notice and not mail it for 60 days and thus comply with the notice requirement.").

Thus, the Court holds that the triggering date for the 60-day period is not the date printed on the notice of disallowance.

**B.   Mailing Date or Receipt Date**

The Court need not decide whether the 60-day period begins running from the date the FDIC mails the notice or from the date when the claimant receives it, because Defendants' Motion to Continue is timely as to either of these dates.

The FDIC mailed the notice of disallowance on March 1, 2016, Docket Nos. 13-1; 22 at 8, and Defendants received it on March 14, 2016, Docket No. 13-2. Pursuant to Fed. R. Civ. P.

Civil No. 15-1635 (JAG)                                                          10

6(a)(1)(A), the triggering date is excluded from calculation. Thus, using the mailing date, the Court begins counting on March 2, 2016 as day one. Day number sixty (60) would fall on Saturday, April 30, 2016. Because the last day of the period falls on a Saturday, the period is extended to Monday, May 2, 2016, the next working day. *See* Fed. R. Civ. P. 6(a)(1)(C). Since Defendants filed their Motion to Continue on this day, Docket No. 11, their motion was timely filed. Given that the receipt date is nearly two weeks after the mailing date, Docket No. 13-2, Defendants' Motion to Continue would necessarily also be timely using the receipt date as the triggering date.

Thus, Defendants' Motion to Continue is timely.

## CONCLUSION

Given that Defendants filed a timely Motion to Continue within 60 days from the FDIC's notice of disallowance of their claims, the FDIC's Motion to Dismiss is DENIED, and Defendants' Motion to Continue is GRANTED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 23rd day of January 2017.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge